122 T.C. No. 6


UNITED STATES TAX COURT


THOMAS E. JOHNSTON and THOMAS E. JOHNSTON, SUCCESSOR IN INTEREST
TO SHIRLEY L. JOHNSTON, DECEASED, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

THOMAS E. JOHNSTON, Petitioner v. COMMISSIONER OF INTERNAL
REVENUE, Respondent


Docket Nos. 26005-96, 2266-97.      Filed February 11, 2004


       Ps made a qualified offer, pursuant to sec. 7430,
   I.R.C., to resolve Ps' tax liabilities for the 1989,
   1991, and 1992 tax years. R accepted Ps' qualified
   offer, without negotiation.

       Thereafter, Ps sought to reduce the amounts stated
   in the qualified offer by the amount of net operating
   losses (NOLs) sustained in the 1988, 1990, 1993, and
   1995 tax years. R refused to allow such a reduction,
   claiming that R's acceptance of Ps' qualified offer
   prevented Ps from reducing the agreed-upon amounts.

_____

       [*]This opinion supplements our opinion in Johnston v.
Commissioner, 119 T.C. 27 (2002).

Held:  The parties entered into a contract to settle the docketed cases, as evidenced by Ps' qualified offer and R's acceptance of that offer.

Held, further, Ps are not now allowed to reduce the amounts stated in the qualified offer for the years at issue by the amount of NOLs sustained in the 1988, 1990, 1993, and 1995 tax years.

Lorraine G. Howell and Kenneth M. Barish, for petitioners.

Nicholas J. Richards and Kevin W. Coy, for respondent.

SUPPLEMENTAL OPINION

NIMS, Judge:  Respondent determined the following deficiencies and penalties with respect to petitioners' Federal income taxes:

| | | | Penalties | |
|---|---|---|---|---|
| Petitioner | Year | Deficiency | Sec. 6662(a) | Sec. 6663 |
| Thomas E. Johnston and * * * Shirley L. Johnston, Deceased | 1989 | $1,546,160 | $309,232 | $1,159,620 |
| Docket No. 26005-96 | | | | |
| Thomas E. Johnston | 1991 | 289,396 | -- | 217,047 |
| Docket No. 2266-97 | 1992 | 341,908 | -- | 256,431 |

By answer respondent also asserted increased deficiencies and penalties in docket Nos. 26005-96 and 2266-97.

These consolidated cases are presently before the Court on respondent's motion for summary judgment filed on September 2,

2003. Petitioners filed an opposition to respondent's motion, and respondent filed a reply to petitioners' opposition.

The issue for decision is whether respondent's acceptance of petitioners' qualified offer precludes petitioners from reducing the amounts stated in the qualified offer for the years at issue by the amount of net operating losses (NOLs) sustained in the 1988, 1990, 1993, and 1995 tax years. We express no opinion as to whether the claimed NOLs are valid for Federal income tax purposes. Solely for the purpose of this adjudication, we assume that the claimed NOLs are valid.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

These cases were set for trial on a special trial calendar to commence on March 3, 2003. On January 31, 2003, petitioners made a qualified offer, pursuant to section 7430, to resolve petitioners' tax liabilities for the 1989, 1991, and 1992 tax years. Petitioners' qualified offer stated, in part:

> Pursuant to Internal Revenue Code ("IRC") Section 7430(g) and * * * Section 301.7430-7T(c)[Temporary Proced. & Admin. Regs., 66 Fed. Reg. 727 (Jan. 4, 2001)], this letter shall constitute the above-referenced taxpayer's [sic] qualified offer to resolve all adjustments at issues in the matters listed above.

- 4 -

The taxpayer's [sic] qualified offer is as follows
according to the case docket number and tax years
involved:

| Docket No. | Tax Year | Amount of Qualified Offer |
|---|---|---|
| 26005-96 | 1989 | $ 35,000 |
| 2266-97 | 1991, 1992 | $ 70,000 |
| | | $105,000 |

This $105,000 offer is made as a qualified offer
for purposes of IRC §7430(g).  Therefore, in making the
offer, the taxpayer is aware that his offer is to
resolve all adjustments in the court proceeding.  Such
offer will fully resolve the taxpayer's [sic] liability
as to those adjustments.

By letter dated February 10, 2003, respondent accepted
petitioners' qualified offer, without negotiation.

After respondent accepted petitioners' qualified offer,
petitioners raised with respondent the issue of reducing the
agreed-upon amounts by applying NOLs from the 1988, 1990, 1993,
and 1995 tax years.

On February 14, 2003, the Court held a conference call with
counsel for the parties.  Counsel for the parties informed the
Court that the parties had reached a basis for settlement and
that there remained the issue of whether petitioners are allowed
to reduce the agreed-upon amounts for the 1989, 1991, and 1992
tax years by applying NOLs from the 1988, 1990, 1993, and 1995
tax years.

On March 19, 2003, the parties filed a stipulation of settled issues, which reserved the issue of whether petitioners "can offset tax deficiencies * * * through net operating loss carry forwards or carrybacks."

On April 22, 2003, which was after respondent had accepted petitioners' qualified offer, petitioners filed an amendment to petition in each docket in which petitioners claimed deductions for the NOLs in question. After the supplemental pleadings were closed, respondent filed the subject Motion for Summary Judgment, which petitioners now challenge.

## Discussion

### I. Summary Judgment

Petitioners do not challenge as a procedural matter respondent's motion for summary judgment, see Rule 121(a) and (b), and it appears that all prerequisites for summary adjudication have been satisfied, id.; Rule 121(d).

### II. Contentions of the Parties

Respondent contends that respondent's acceptance of petitioners' qualified offer completely resolved the issue of petitioners' liabilities for the 1989, 1991, and 1992 tax years. Respondent asserts that petitioners are not now able to raise new issues relating to their 1989, 1991, and 1992 liabilities.

Petitioners contend that petitioners' qualified offer included only items in dispute in the cases at the time the offer

was made. Petitioners argue that because the issue of the NOLs was not in dispute when they made the qualified offer, the qualified offer was exclusive of the amounts related to the NOLs. Consequently, petitioners contend that they are entitled to reduce the agreed-upon amounts for the 1989, 1991, and 1992 tax years by applying NOLs from the 1988, 1990, 1993, and 1995 tax years.

III. Analysis

The parties agree that petitioners' offer, as stated in their January 31, 2003, letter, was a qualified offer within the meaning of section 7430(g). In now seeking to reduce the agreed-upon settlement amounts for the 1989, 1991, and 1992 tax years by the NOL amounts, petitioners are in effect asking us to treat the settlement amounts as though they resulted from a court decision in which various issues were resolved, but where entry of decision awaited the availability, if any, of various NOLs. See, e.g., Gen. Signal Corp. & Subs. v. Commissioner, 104 T.C. 248 (1995). We must therefore decide whether an agreement reached by way of the qualified offer provision may be dealt with in the manner petitioners request, and thus should be treated differently from the way this Court treats settlement agreements reached outside the parameters of the qualified offer provision.

Section 7430 provides for the award under certain circumstances of administrative and litigation costs to a

taxpayer.  An award of administrative and litigation costs may be made where the taxpayer (1) is the "prevailing party", (2) has exhausted available administrative remedies (in the case of litigation costs), (3) did not unreasonably protract the administrative or judicial proceeding, and (4) claimed reasonable costs.  Sec. 7430(a), (b)(1), (3), (c).  One way for a taxpayer to establish that the taxpayer is the prevailing party is by a comparison of the amount of the last qualified offer with the portion of the judgment attributable to the adjustments at issue when that qualified offer was made.  Sec. 7430(c)(4)(E); sec. 301.7430-7T(b)(3), Temporary Proced. & Admin. Regs., 66 Fed. Reg. 727 (Jan. 4, 2001).

Section 7430(c)(4)(E) and (g) provides, in part, as follows:

SEC. 7430(c).  Definitions.--For purposes of this section--

* * * * * * *

(4) Prevailing party.--

* * * * * * *

(E) Special rules where judgment less than taxpayer's offer.--

(i) In general.--A party to a court proceeding meeting the requirements of subparagraph (A)(ii) shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party under subsection (g).

* * * * * * *

(g) Qualified Offer.--For purposes of subsection (c)(4)--

(1) In general.--The term "qualified offer" means a written offer which--

(A) is made by the taxpayer to the United States during the qualified offer period;

(B) specifies the offered amount of the taxpayer's liability (determined without regard to interest);

(C) is designated at the time it is made as a qualified offer for purposes of this section; and

(D) remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date trial begins, or the 90th day after the date the offer is made.

The legislative history of section 7430 provides insight into the purpose of section 7430:

The Committee believes that settlement of tax cases should be encouraged whenever possible. Accordingly, the Committee believes that the application of a rule similar to FRCP 68 [rule 68 of the Federal Rules of Civil Procedure] is appropriate to provide an incentive for the IRS to settle taxpayers' cases for appropriate amounts, by requiring reimbursement of taxpayer's costs when the IRS fails to do so. [S. Rept. 105-174, at 48 (1998), 1998-3 C.B. 537, 584.]

Additionally, we have previously stated that "The purpose underlying the qualified offer provision of section 7430(c)(4)(E) * * * is to encourage settlements by imposing litigation costs on the party not willing to settle." Gladden v. Commissioner, 120 T.C. 446, 450 (2003).

As the very purpose of the qualified offer provision is to encourage settlements, we conclude that there is no persuasive reason why a settlement reached by way of the qualified offer provision should be treated any differently from the way this Court treats settlement agreements reached outside the parameters of the qualified offer provision.

As contracts, settlements are governed by general principles of contract law. Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 330 (1997), affd. without published opinion 208 F.3d 205 (3d Cir. 2000). Settlement of an issue before the Court does not require any particular method or form and can be accomplished by letters of offer and acceptance. Id. Settlement agreements are effective and binding once there has been an offer and an acceptance; filing the agreement with the Court is not required for the agreement to be effective and binding. Id. at 338.

We are convinced that the proposed figures conveyed to respondent's counsel by way of the January 31, 2003, letter from petitioners' counsel constitute the definite and material terms of an offer to settle the docketed cases, and we so hold. The terms of that offer were accepted by respondent, as evidenced by the February 10, 2003, letter. We believe that the parties entered into a contract to settle the docketed cases, and we so hold.

Petitioners contend that temporary regulations promulgated under section 7430 support their position that new issues may be raised after an agreement is reached if the agreement is reached by way of the qualified offer provision.  We reject this contention.

Section 301.7430-7T(c)(3), Temporary Proced. & Admin. Regs., 66 Fed. Reg. 728 (Jan. 4, 2001), provides, in part:

> A qualified offer specifies the offered amount if it specifies the dollar amount for the liability of the taxpayer * * *.  This amount must be with respect to all of the adjustments at issue in the administrative or court proceeding at the time the offer is made and only those adjustments.  The specified amount must be that amount, the acceptance of which by the United States will fully resolve the taxpayer's liability, and only that liability, (determined without regard to adjustments stipulated by the parties to be fully resolved through another pending court or administrative proceeding, or interest, unless interest is a contested issue in the proceeding) for the type or types of tax and the taxable year or years at issue in the proceeding.

Thus, the regulation contains three requirements:  (1) The offered amount must specify the dollar amount for the liability, (2) the offered amount must be with respect to all adjustments at issue and only those adjustments, and (3) the offered amount must be an amount that will fully resolve the taxpayer's liability for the type(s) of tax and tax year(s) at issue.

Petitioners focus on the second requirement of this regulation, arguing that the language "and only those

adjustments" prohibits taxpayers from including in the offered amount any items that were not in dispute at the time the qualified offer was made.

Respondent argues that petitioners misinterpret the regulatory language. Respondent argues that the plain language of the third requirement, which provides that the offered amount be that amount which will fully resolve the taxpayer's liability, prevents taxpayers from raising new issues once a qualified offer is accepted. Hence, respondent argues that petitioners' interpretation of the second requirement conflicts with the third requirement. As an alternative to petitioners' interpretation of the second requirement, respondent argues that the second requirement is primarily concerned with the consequences of the rejection of a qualified offer. As respondent notes, if new issues are raised after the rejection of a qualified offer, the amount of liability attributable to those new issues is not considered when comparing the amount of an eventual judgment to the amount of the last qualified offer. Sec. 7430(c)(4)(E); sec. 301.7430-7T(b)(3), Temporary Proced. & Admin. Regs., 66 Fed. Reg. 727 (Jan. 4, 2001).

Respondent argues that, in order to comply with the third requirement, if petitioners wanted to apply the NOLs to reduce

the liabilities set forth in the qualified offer, petitioners should have at least stated that the offered amount was subject to reduction by application of NOLs. We agree with respondent.

Petitioners' interpretation of the regulation renders the third requirement meaningless. In order to give effect to the third requirement, an offered amount must be one that will fully resolve a taxpayer's liability for the type(s) of tax and tax year(s) at issue. If taxpayers were allowed to reduce the amount of the qualified offer after the qualified offer was made, then the qualified offer would not be one that, if accepted, would fully resolve the taxpayer's liability, thus giving no effect to the third requirement. In the current case, petitioners' qualified offer would not fully resolve their liabilities for the type of tax and tax years at issue if petitioners were now able to apply the NOLs to reduce the offered amount.

Additionally, the fact that the NOLs were not in dispute at the time the qualified offer was made is a matter of petitioners' own doing. Petitioners admittedly raised the issue of the NOLs for the first time after the agreement was entered into. In petitioners' Opposition to Respondent's Motion for Summary Judgment, petitioners state that, immediately upon acceptance of the qualified offer by respondent, petitioners "reminded" respondent that petitioners had several years of tax loss carryforwards and carrybacks.

Petitioners could have included the NOLs among the "adjustments at issue in the administrative or court proceeding" by the simple expedient of moving to amend their petitions to claim the NOL deductions before, rather than after, making their qualified offer. Had that motion been made and granted, which under the postulated conditions would appear to have been likely, cf. Cloes v. Commissioner, 79 T.C. 933 (1982), the NOLs would have become an "adjustment at issue" for purposes of this court proceeding. Instead of moving to amend the petitions before making the qualified offer, petitioners waited until after respondent accepted the qualified offer to move to amend their petitions to claim the NOL deductions. These motions to amend their petitions made after their qualified offer was accepted are obviously too late. As we stated in Korangy v. Commissioner, T.C. Memo. 1989-2, affd. 893 F.2d 69 (4th Cir. 1990): "The time for petitioners to make a thorough examination of their case is prior to the date of trial, not subsequent to their execution of a settlement agreement."

Petitioners assert that it would have been premature to raise the issue of the NOLs prior to arriving at the agreement, which included taxable income for the years in issue. Contrary to this assertion, petitioners could have pleaded the NOL deductions as an alternative position. Rule 31(c) allows pleading in the alternative, and the Court generally requires it.

See also Cloes v. Commissioner, supra at 937; Vest v.
Commissioner, T.C. Memo. 1995-188, affd. without published
opinion 89 F.3d 839 (7th Cir. 1996).

In a situation similar to the one here, the taxpayers in Yoo
Han & Co. v. Commissioner, T.C. Memo. 1991-308, attempted to
claim a number of deductions, including a net operating loss
carryback deduction by the corporate taxpayer, after reaching a
settlement agreement with the Commissioner.  The taxpayers in
that case also claimed that it would have been premature to claim
the net operating loss carryback prior to arriving at the
settlement that increased their taxable income.  In that case, we
declined to insert into the settlement agreement terms that the
taxpayers for whatever reason failed to include.  Id.
Additionally, respondent made concessions by accepting the offer,
and "we will not force further concessions upon respondent."  Id.

We conclude that respondent's acceptance of petitioners'
qualified offer fully resolved the issue of petitioners'
liabilities for the 1989, 1991, and 1992 tax years.  Petitioners
are not now allowed to add additional terms to that agreement by
applying NOLs from other years to reduce the agreed-upon amounts.

One final note.  On December 29, 2003, the Commissioner
published final regulations, pursuant to section 7430, that
relate "to the qualified offer rule, including the requirements

- 15 -

that an offer must satisfy to be treated as a qualified offer under section 7430(g)".  Preamble to sec. 301.7430-7, Proced. & Admin. Regs., 68 Fed. Reg. 74848 (Dec. 29, 2003).  We note that the final regulations added Example 4 to sec. 301.7430-7(e), Proced. & Admin. Regs., which briefly discusses whether a taxpayer may reduce the amount the taxpayer will pay pursuant to a qualified offer, after the offer is accepted by the Commissioner, by applying net operating loss carryovers.  The language of Example 4 is as follows:

> Example 4.  Offer must resolve full liability.  Assume the same facts as in Example 1, except that A makes a qualified offer that is accepted by the IRS.  After the offer is accepted, A attempts to reduce the amount A will pay pursuant to the offer by applying net operating loss carryovers to the years in issue. Because the net operating losses were not at issue when the offer was made, A's offer was a qualified offer. Whether A is entitled to apply net operating losses to reduce the amount stated in the offer will depend upon the application of contract principles, local court rules, and, because net operating losses are at issue, section 6511(d) and related provisions.

As stated, Example 4 was not part of the temporary regulations. See sec. 301.7430-7T(e), Temporary Proced. & Admin. Regs., 66 Fed. Reg. 728 (Jan. 4, 2001).  The final regulations are applicable to qualified offers made after December 24, 2003. Sec. 301.7430-7(f), Proced. & Admin. Regs.  Petitioners' offer was made before that date.

We have considered all of the other arguments made by the parties, and to the extent that we have not specifically addressed them, we find them to be without merit.

To reflect the foregoing,

<u>An appropriate order granting respondent's motion for summary judgment will be issued, and decisions will be entered under Rule 155</u>.